IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HERIBERTO CASTRO GUTIERREZ

       Petitioner,                     No. 2: 12-cv-2421 GGH P

       vs.

RON BARNS, WARDEN                     ORDER[1]

       Respondent.

_____/

*Introduction and Summary*

       Petitioner attacks his multiple convictions for the kidnapping and rape of his wife and kidnapping of his daughter. He first seeks review of his conviction for one of the less significant counts (threats to commit bodily harm) in that all of the threats assertedly took place in Oregon outside the territorial jurisdiction of California. Next, he alleges that he was denied his vicinage rights under the Sixth Amendment when he was tried for his wife's rape in Yolo County. Finally, he alleges that the court's further instruction to a jury question hopelessly muddled the

---

[1] This case proceeds as a consent case pursuant to 28 U.S.C. 636(c).

1

jury's ability to render a verdict on the kidnapping count.

The first issue falls before the inability of this federal habeas court to fault the state court's application of state law. The second issue also fails in light of the above stated "state law" preclusion, as well as the fact that the Supreme Court has never held that the Sixth Amendment vicinage protection applies to the states. Finally, petitioner fails to show that the ambiguous/confusing answer to the jury's question infected his kidnapping conviction in an AEDPA sense. The petition shall be denied.

*Background Facts*

The background facts as stated by the unpublished Court of Appeal opinion are not reasonably disputed herein, as they were conceded to be correct on petition for review to the California Supreme Court. See Petition at electronic page 22.

> Defendant and E.C. had a stormy and physically abusive relationship, punctuated by a restraining order against defendant and a legal separation-both in effect at the time of the incident here. The couple also had a son, A.C., who was nearly three years old at this time.
>
> The incident unfolded on September 2, 2005 (E.C.'s birthdate), beginning in Portland. On that day, E.C. buckled A.C. into his car seat in the front passenger seat of her neighbor's van, which she had been driving because defendant had obtained a key to E.C.'s car. E.C. planned to drop the boy off at day care and go on to work.
>
> Shortly after E.C. drove off, however, defendant, who had been lying in wait in the van, pounced, putting his arm around her neck. When E.C., frozen with shock, failed to comply with defendant's order to keep driving, he unbuckled her seatbelt and threw her to the floor of the van. Now, defendant was in the driver's seat. He disabled E.C.'s cell phone and drove away.
>
> Defendant repeatedly threatened to shoot E.C. twice in the head if she tried anything, saying he had a gun in the back of the van. Defendant hit E.C. and tried to hit her again, prompting A.C. to say, "daddy, no."
>
> Shortly thereafter, defendant stopped the van on a dead-end street, taped E.C.'s hands together behind her back using red duct tape (a type of tape he used in his insulation work), and called E.C. an ungrateful whore.
>
> Then defendant drove onto Interstate 5, after similarly threatening E.C. once again. Defendant said that he was going to Mexico, and that he just wanted to be with A.C.; he did not want E.C. anymore and would get rid of her.

Between Corvallis and Medford, E.C. convinced defendant that it would look less suspicious if she were sitting on the back seat instead of on the floor (A.C. was still in his car seat in the front passenger seat). Defendant also removed the tape from E.C.'s arms, after she said her arms hurt.

Defendant then demanded to know whether E.C. had had sex with various male coworkers that he named; he hit and tried to hit her when she said no and asked her if his "dick" was not enough for her.

This led to defendant's demand that E.C. "suck his dick." E.C. hesitated because A.C. would have to watch and she disliked this activity. She eventually relented and performed the deed, which was made all the more humiliating when defendant told her not to spit out the ejaculate and told A.C. that this is how bitches are treated (A.C. repeating the Spanish word defendant had used, "putas"). Unable to swallow the ejaculate, E.C. spit it onto defendant's leg and shirt which she quickly wiped off with the sleeve of her sweater.

The trio stopped in Medford and again in Ashland, near the California border, for supplies and bathroom breaks. During these as well as other stops, defendant threatened to kill E.C. if she tried anything, and he held A.C.

On they drove. Somewhere near Mt. Shasta, defendant pulled onto an isolated dirt road and changed a tire. E.C. was somewhat relieved when she did not see a gun in the back of the van. It was also at this point that defendant had sexual intercourse with an unwilling E.C., who said she would do whatever he wanted as long as he stopped hitting her. She was really scared and did not want to upset him.

They stopped next in Redding, where gas was purchased and E.C. threw away some paperwork and the used red duct tape.

The ordeal finally came to an end at a Chevron gas station in Woodland, when the three entered the station's store, with defendant holding A.C. E.C. silently mouthed "help me, please help me" to a female clerk who met E.C. in the bathroom while defendant was gazing at products. The police were summoned and defendant was arrested.

Defendant testified. He acknowledged the trip and the sexual acts, but claimed they were consensual and prompted by E.C.'s birthday on September 2.

Among other evidence, the investigation disclosed the following. The sweater that E.C. had used to wipe the semen and saliva off defendant tested consistent with those two substances. The police retrieved the paperwork and the red duct tape that E.C. had thrown out at the Redding gas station. A roll of red duct tape was found in the van behind the driver's seat; the torn ends of that roll matched the torn ends of the red duct tape E.C. had thrown away. A sexual assault exam disclosed tape marks on E.C.'s wrists, multiple bruises, tenderness in her neck, and vaginal and cervical redness and tenderness. And, E.C.'s mother had reported her missing on the day of the incident.

People v. Gutierrez, 2011 WL 1457184 *1-2 (2011).

*Charged Offenses and Ultimate Convictions*

In this case it is important to understand the crimes for which petitioner was charged and ultimately convicted in order to understand the issues. Respondent has accurately and succinctly set forth this information.

> A jury acquitted Petitioner of kidnapping for rape (Cal. Penal Code § 209 (b)(1) [fn. All further statutory references are to the California Penal Code unless otherwise indicated]. A jury convicted Petitioner Heriberto Castro Gutierrez of forcible spousal rape (§ 262 (a)(1) – count 2), two counts of kidnapping (§ 207 (a) – counts 4 & 5; E.C. and A.C. respectively); carjacking (§ 215 (a) – count 6); misdemeanor child endangerment (§ 273a (b) – count 7); parental corporal injury (§ 273.5 (a) – count 8; and criminal threats (§ 422 – count 9). Furthermore, the jury convicted Petitioner of the following lesser included offenses to the count 1 charge (kidnapping for rape), kidnapping, forcible spousal rape, felony and misdemeanor false imprisonment, and misdemeanor battery and assault. A charge of oral copulation (count 3) had been previously dismissed because it occurred in Oregon.
>
> The jury also found that the forcible spousal rape conviction (count 2) came within the one strike law (§ 667.61 (a), (c)(2)) on two independent grounds: (1) Petitioner kidnapped E.C. and that movement substantially increased the risk of harm to her above that inherent in rape (§ 667.61 (d)(2)) and (2) Petitioner kidnapped E.C. and tied or bound her in the commission of the rape (§ 667.61 (e)(1) & former (e)(6) (now (e)(5)).
>
> Under the one strike law, Petitioner was sentenced to an indeterminate term of 25 years to life for the forcible spousal rape (count 2) on ground number (1) above (kidnap and risky movement). (§ 667.61 (a), (d)(2).)
>
> Petitioner was sentenced to an unstayed determinate term of 12 years four months, comprised as follows: a principal term of nine years for the carjacking (count 6) and the following three subordinate consecutive terms – one year eight months for A.C.'s kidnapping (count 5); one year for the parental corporal injury (count 8); and eight months for the criminal threats (count 9).
>
> On April 15, 2011, the California Court of Appeal, Third Appellate District, modified and affirmed the judgment. The Court of Appeal vacated the following duplicative and lesser included convictions: forcible spousal rape (§ 262 (a)(1) – count 1a); kidnapping (§ 207 (a) – count 1b); felony false imprisonment (§ 236 & 237 (a) – count 1c); misdemeanor battery (§ 242); and misdemeanor assault (§ 240). The finding of tying and binding under section 667.61, former subdivision (e)(6) was stricken. The reference in the minute order to sentence under section 667.61, subdivision (e) is deleted. The one-year concurrent sentence for the misdemeanor child endangerment conviction (§ 272a(b) – count 7) was stayed under section 654. (Opinion at 5-6, 22.)

/////

On July 27, 2011, the California Supreme Court denied the Petition for Review. (Supreme Court Denial S193441.) Answer at electronic page 9-10.

*Discussion*

    I. <u>The No Territorial Jurisdiction Claim</u>

In the "threats" claim (Count 9), one barely meeting the "in custody" requirement for federal habeas corpus,[2] petitioner asserts that because no threats were made in California, the trial court based in Yolo County had no jurisdiction, i.e., no crime was committed in California. Even assuming that "no state court territorial jurisdiction" states a federal claim, <u>see</u> Answer at electronic page 16-17, the entire claim is premised on an alleged error in state law interpretation thereby precluding this court from acting.

The Court of Appeal analyzed the claim as follows:

> Under section 27, "[a]ll persons who commit, in whole or in part, any crime within this state" are subject to California's territorial jurisdiction for that charge. (§ 27, subd. (a)(1).) A state may exercise jurisdiction over criminal acts that take place outside of the state if the results of the crime are intended to, and do, cause harm within the state. ( *Betts, supra*, 34 Cal.4th at p. 1046.) "The ultimate question [concerning territorial jurisdiction] is whether ... there is a sufficient connection between that crime [charged] and the interests of the State of California such that it is reasonable and appropriate for California to prosecute the offense." ( *People v. Renteria* (2008) 165 Cal.App.4th 1108, 1118 (*Renteria* ).)
>
> We conclude that California had territorial jurisdiction over the criminal threats charge in two respects.
>
> First, it is true, as defendant notes, that the evidence of explicit threats was centered in Oregon. The gist of the threats was that defendant would shoot E.C. twice in the head if she tried anything. However, evidence also showed that defendant threatened E.C. throughout the ordeal, including most pointedly when they made stops for gas, supplies or bathroom breaks. Defendant and E.C. made such stops in California. The record shows as well that defendant threatened E.C. explicitly just before entering California, while they were in Ashland. And because E.C. was still afraid that defendant was going to kill her, she asked the Woodland police at the journey's end, while still trembling, not to let defendant go.
>
> Second, one of the elements of the criminal threat offense is that the threat actually caused the victim to be in "sustained fear" for her own safety. (§ 422; *People v.*

---

[2] Petitioner's sentence for this claim was 8 months tacked onto his indeterminate life imprisonment sentence and additional determinate sentence.

5

> *Fierro* (2010) 180 Cal.App.4th 1342, 1348.) Given the evidence just described, that element was certainly present in California. Again, a state may exercise jurisdiction over criminal acts which take place outside of the state if the results of the crime are intended to, and do, cause harm within the state. ( *Betts*, supra, 34 Cal.4th at p. 1046.)
>
> We conclude, based on substantial evidence, that there was a sufficient connection between the offense of criminal threats and the interests of California such that it was reasonable and appropriate for California to prosecute this offense. (*Renteria*, *supra*, 165 Cal.App.4th at p. 1118; § 27.)

People v. Gutierrez, 2011 WL 1457184, at *3-4.

As he argued before the California Supreme Court, petitioner argues here that the Court of Appeal's analysis violated *state law*. Petition at electronic pages, 23-25.  That is, "But as explained in People v. Betts, supra, territorial jurisdiction was previously restricted at common law and has been permissibly expanded *via specific statutes with precise designations of what acts come within their ambit.*".... The opinion focuses inappropriately on the lingering effects of a completed crime.... Petition at electronic page 24.  In other words, the appellate court's interpretation of Betts and Cal. Penal Code § 27 was assertedly erroneous.  It is this "erroneous" interpretation which then leads to petitioner's conclusion on the territorial jurisdictional issue.

But petitioner may not base his federal claim on such a "state law error" premise. Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602 (2005).  "If a state law issue must be decided in order to decide a federal habeas claim, the state's construction of its own law is binding on the federal court."  Horton v. Mayle, 408 F.3d 570 (9th Cir. 2005).  The one exception might lie where the state court's interpretation of state law is so strained that it is but an artifice to avoid the federal issue.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).  However, the state appellate court's interpretation of its own law is not  strained to the point of artifice.  Indeed, it is not illogical at all.  Therefore, it is binding.

Because this court may not construe state law opposite to that pronounced by the state appellate court in such a way as to raise a territorial jurisdiction question, this claim must fail.

II. Venue in Yolo County

Petitioner again takes issue with the appellate court's interpretation of a California statute, this time Cal. Penal Code § 783, which provides that a crime committed in a motor vehicle is properly venued, among other places, in the county where the trip terminates – here Yolo County. Petitioner claims his Sixth Amendment vicinage rights were violated because the crime actually occurred in either Siskiyou or Shasta counties.

As pointed out by respondent, other than again merely attacking state law as set forth by the Court of Appeal construing the venue statute, there is an additional fundamental flaw with petitioner's argument – The Supreme Court has never applied the federal vicinage rights to the states via the Fourteenth Amendment. See Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004). [3] Therefore, under AEDPA, petitioner cannot complain in federal habeas over this alleged venue/vicinage defect.

III. The Supplemental Jury Instruction Issue

In order to understand this issue, one must focus on the charge to which the supplemental instruction applied. Petitioner was charged with, and convicted of, kidnapping in violation of Cal. Penal Code section 207(a):

> 207. (a) Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping.

No one disputes that the jury was initially instructed correctly regarding this charge. The problem came about when, during deliberations, the jury asked for further

---

[3] The Stevenson court ultimately avoided the "constitutional issue" of Fourteenth Amendment incorporation, and went on to hold that venue had been proper under state law. However, the issue in this habeas corpus action is not one of constitutional magnitude. It is one of AEDPA statutory construction which precludes review of a federal law asserted error unless the *Supreme Court* has held it to be so. 28 U.S.C. § 2254(d)(1). The undersigned is not determining the vicinage incorporation issue *de novo*; the undersigned is only observing that the Supreme Court has never held it incorporated. See Carter v. Chappell, 2013 WL 781910 (C.D. Cal. 2013). That is the end of the matter for this issue.

7

1 instruction. The jury desired to understand (again) how it could use evidence related to actions
2 which took place in Oregon. The trial judge gave two instructions to answer the jury's question:

> The first instruction, which defendant does not challenge, concerned how to use evidence of an uncharged offense (the oral copulation in Oregon). This instruction told the jurors that they could use this evidence, if proved by the People, only to show whether defendant had an intent, motive, or plan to commit the kidnap for rape charge. The jury acquitted defendant of kidnap for rape.
>
> The second instruction, which defendant does challenge, had two parts. The first part quoted section 207, subdivision (d) verbatim, which states in full: **"Every person who, being out of this state, abducts or takes by force or fraud any person contrary to the law of the place where that act is committed, and brings, sends, or conveys that person within the limits of this state, and is afterwards found within the limits thereof is guilty of Kidnapping." The second part added: "The attorneys stipulate that the defendant's actions, if found by you to be true beyond a reasonable doubt, are contrary to the law of the State of Oregon."**

People v. Gutierrez, 2011 WL 1457184, at *5 (emphasis added).

The trial court's reference to Cal Penal Code § 207(d) was, of course, incorrect as petitioner's charge involved section 207(a). Petitioner claimed to the Court of Appeal that the jury had to have become confused as to the charge on which it would later convict him, and that the errant instruction was tantamount to a directed verdict on the charge of conviction. The appellate court reasoned that the jury was not confused.

In situations where a trial court's instruction could be viewed as confusing or ambiguous, the federal standard is as follows:

> In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. See *Sandstrom v. Montana*, 442 U.S. 510, 520-521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is " 'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). " '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Boyde v. California*, 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (quoting *Cupp, supra*, at 146-147, 94 S.Ct. 396). If the charge as a whole is ambiguous, the question is whether there is a " 'reasonable likelihood that the jury has applied the

challenged instruction in a way' that violates the Constitution." *Estelle, supra*, at 72, 112 S.Ct. 475 (quoting *Boyde, supra*, at 380, 110 S.Ct. 1190).

Middelton v. McNeil, 541 U.S. 433, 437, 124 S. Ct. 1835 (2004).

The California Court of Appeal reasoned:

> First, there is not a reasonable likelihood that the jury used the challenged instruction to convict defendant of the uncharged offense of kidnapping under section 207, subdivision (d), rather than the charged offense of kidnapping under section 207, subdivision (a). The trial court properly instructed the jury with the elements of section 207, subdivision (a) kidnapping. (CALCRIM No. 1215 (new Jan. 2006).) The trial court also properly instructed on the one strike kidnapping allegations for the rape charge (§ 667.61, subds.(d), (e)), which repeated the section 207, subdivision (a) kidnapping elements already instructed upon and required the jury to find them to sustain the one strike allegations. (CALCRIM Nos. 3175, 3179 (new Jan. 2006).) The basic elements of these instructed-upon kidnapping charges comprised: the defendant takes and moves the victim a substantial distance by force or fear without the victim's consent, and the defendant does not reasonably believe the victim consented. In its verdict, the jury convicted defendant of kidnapping under section 207, subdivision (a), not subdivision (d); and also found true the one strike kidnapping allegations accompanying the rape charge, which, it bears repeating, required the jury to again find these elements of a section 207, subdivision (a) kidnapping.
>
> In this instructional and verdict milieu, there is simply no reasonable likelihood that the jury ignored the full kidnapping instructions properly given by the trial court (§ 207, subd. (a)-based kidnapping), and instead convicted defendant of kidnapping pursuant to a cryptic instruction that the trial court gave only in response to the jury's question of what to do with the Oregon evidence/actions (§ 207, subd. (d)-based kidnapping). Such an approach would have made no sense: Why would the trial court instruct the jurors at length on all the elements of the charged kidnap, only to give them the "real" abridged instruction on that offense when they fortuitously happened to ask a tangential question on the subject? In this milieu, it is not surprising there is no showing the jury was confused by the challenged instruction.
>
> Second, defendant contends the challenged instruction of section 207, subdivision (d) kidnapping confused the jury by contradicting the kidnapping instruction of section 207, subdivision (a). As defendant argues, the challenged instruction told the jurors they could find kidnapping based on force or fraud (§ 207, subd. (d)), and the instruction failed to include the consent defense upon which defendant relied. By contrast, the section 207, subdivision (a) kidnapping instruction the trial court gave required force or fear, and included defendant's defense: The alleged victims (his estranged wife and their three-year-old son) consented to the movement, and he reasonably believed they had consented.
>
> We reject defendant's second contention for the same reasons we rejected his first. Furthermore, the prosecutor argued to the jury that defendant had used force or fear in the kidnappings, that the victims did not consent to the movement, and that

> defendant did not reasonably believe the victims had consented. Nor is this a case of contradictory instructions as in *People v. Rhoden* (1972) 6 Cal.3d 519, as defendant maintains. In Rhoden, the jury was instructed, as to the charged crime of kidnapping for robbery, that it both required movement and did not require movement. (*Id*. at pp. 525-526.)
>
> Defendant's third contention centers on the stipulation part of the challenged instruction-"that the defendant's actions, if found by you to be true beyond a reasonable doubt, are contrary to the law of the State of Oregon." Defendant raises two concerns. First, defendant questions whether the term "actions" refers to the "actions" in the prosecution's case-in-chief or the "actions" defendant testified to in his own defense. There is not a reasonable likelihood, however, that the jury believed that the "actions" it found true beyond a reasonable doubt, and therefore contrary to law, amounted to defendant's defense to the charges. Defendant's second concern is that this stipulation amounted to a directed verdict tantamount to a guilty plea. If such were the case, though, the jury may well have wondered why it was deciding the kidnapping charges since defendant was conceding he was guilty of kidnapping. We agree with the Attorney General that the jury, instead, reasonably would have interpreted this stipulation to mean only "that the attorneys had agreed that if the jury found [defendant] guilty beyond a reasonable doubt of kidnapping under the previously given California law he would then be guilty under Oregon law" too. And viewed in this reasonable way, defense counsel did not render ineffective assistance in entering into the stipulation.

People v. Gutierrez, 2011 WL 1457184, at *5-6.

The undersigned is not as sanguine as the Court of Appeal that the second "abridged" instruction would not cause significant confusion in the sense that the two differing charges were essentially made one in the same. Nor is the court free of doubt that the jury's prescience was so great as to recognize the mistake and disregard the second instruction, which the jury is presumed to follow as much as it is presumed to follow the first one. Moreover, the section 207(d) instruction dovetailed with the jury's request involving the use of Oregon law. When given the Oregon law instruction, the jury could reasonably view it as applying to the errant instruction – an instruction the jury was to follow – one who acts "out of this state" "contrary to the law of the place where that act is committed[,] "is guilty of kidnapping." Thus, the stipulation providing that: "'The attorneys stipulate that the defendant's actions, if found by you to be true beyond a reasonable doubt, are contrary to the law of the State of Oregon[,]'" on its face did tell the jury that petitioner was guilty of kidnapping under Oregon law, the "law of the place" with which section 207(d) was concerned (if they found the facts warranted such). It is certainly

plausible to believe that the jury would view the stipulation to a violation of Oregon law, not as mere surplusage, but as directing them to find guilt under section 207(d) if the facts so warranted. And the jury's job in this section 207(a) prosecution was to find a violation of California law, not that of Oregon, which would have been encompassed by section 207(d). Finally, after reference by the trial judge to the substance of section 207(d) in a formal instruction, the jury could well have viewed the case as involving equivalent statutory subsections – something which is not acceptable if we demand that petitioner be guilty of the subsection actually charged.

However, the undersigned's doubts are insufficient to carry the day for petitioner in this AEDPA context, and the correct standard of review bears iteration at this juncture. The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, __U.S.__, 131 S. Ct. 770, 785-86, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

In this context, the state appellate opinion was not devoid of reason. The fact that the rape charged was only expressly allied with the section 207(a) charge is a good reason why the jury might have refocused on the correct subsection. Moreover, the "fraud" provision of 207(d) was not in play under the facts of this case – it was totally a section 207(a) "force or fear" prosecution regarding the kidnapping. The prosecutor argued such with respect to the kidnapping: "In order to prove kidnap, the evidence has to show the defendant took Elsa and Alex using force or fear." RT 935. See also RT 930. And, as the Supreme Court stated: "Nothing in *Boyde* precludes a state court from assuming that counsel's arguments clarified an ambiguous jury charge. This assumption is particularly apt when it is the prosecutor's argument that resolves an ambiguity in favor of the defendant." Middelton, 541 U.S. at 438.

Because the Court of Appeal was reasonable in the AEDPA sense, its take on the "milieu" cannot be overridden by an equally plausible view on what might have influenced the jury in its conviction. Finally, the "directed verdict" argument was [and is] a stretch in that under the stipulation, the jury still had to find the facts beyond a reasonable doubt. The reasoning by the appellate court that the jury probably did not believe that its job was performed via the stipulation is supported by the very words of the stipulation.

No cognizable error exists for petitioner's ambiguous jury instruction claim.

IV.  Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in this order, a substantial showing of the denial of a constitutional right has been made only in regard to the jury instruction claim.

/////

/////

*Conclusion*

The petition for a writ of habeas corpus is denied. The Clerk shall enter judgment in favor of respondent. A certificate of appealability should issue in this case, but only in regard to the supplemental jury instruction claim.

Dated: June 4, 2013

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE